**FILED**
**June 21, 2017**
**9:16 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Carolyn Beecher | )   Docket No.  2016-08-0279 |
| | ) |
| v. | )   State File No.  97742-2015 |
| | ) |
| McKesson Corporation, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims, | ) |
| Amber E. Luttrell, Judge | ) |

---

### Affirmed and Certified as Final—Filed July 21, 2017

---

The employee, a worker on an assembly line, alleged suffering pelvic organ prolapse as a result of lifting heavy items at work. Following an expedited hearing, the trial court found the employee was not likely to prevail at trial and denied benefits. We affirmed the trial court's decision and, subsequently, the employer filed a motion for summary judgment. The trial court granted the motion and dismissed the case. The employee has appealed. We affirm the trial court's decision and certify the court's order granting summary judgment as final.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Carolyn Z. Beecher, Memphis, Tennessee, employee-appellant, pro se

Thomas P. Cassidy, Jr., Memphis, Tennessee, for the employer-appellee, McKesson Corporation

### Memorandum Opinion[1]

     This is the second appeal of this case. Carolyn Beecher ("Employee") filed the first appeal after the trial court concluded she had not presented sufficient medical proof

---

[1] "The Appeals Board may, in an effort to secure a just and speedy determination of matters on appeal and with the concurrence of all judges, decide an appeal by an abbreviated order or by memorandum opinion, whichever the Appeals Board deems appropriate, in cases that are not legally and/or factually novel or complex." Appeals Bd. Prac. & Proc. § 1.3.

to establish she would likely prevail at trial with respect to whether her injuries arose primarily out of and in the course and scope of her employment with McKesson Corporation ("Employer"). In an opinion filed on December 19, 2016 affirming the trial court's decision, we provided the following summary of the pertinent facts.

[Employee] alleges experiencing pelvic organ prolapse as a result of lifting while in the course and scope of her employment with [Employer] on November 16, 2015. Employee alleges that on that date, she was performing her duties on an assembly line when she lifted a heavy item from a conveyor belt and felt pain in her abdomen. According to the trial court's order, Employee testified that, after working additional shifts, her condition worsened and she noticed a protrusion at her vaginal opening. She testified that she attempted to report the incident to Employer's human resources personnel on November 30, 2015. However, when she was unable to contact anyone in the human resources office, she informed "Nicole" of her injury. According to the trial court's order, Employer's human resources representative, Rick Clifton, testified that Employee reported the work accident to Employer on December 10, 2015.

Employee was examined by a gynecologist, Dr. Elizabeth Mann, who noted that Employee complained of pain that had begun two weeks prior and a protrusion at her vaginal opening. She referred Employee for a surgical consult with Dr. Stephen Portera, who recommended surgery to address Employee's condition. Dr. Portera performed the surgery and released Employee to return to work with lifting restrictions and a prescription for physical therapy.

After her surgery, Employee was provided a panel of physicians from which she selected a medical group that included Dr. Corey Tinker. Dr. Tinker examined Employee and observed that she had suffered pelvic organ prolapse and that she was required to perform heavy lifting for her employment. He opined that "[p]elvic organ prolapse is always multi-factorial but with the nature of the patient's work and the way in which the symptoms presented, I do feel it likely" her condition was work-related. Dr. Tinker noted, however, that his ability to render an opinion was limited because he had not seen her prior to her surgery.

Dr. B. Todd Chappell, a gynecologist, performed a records review at Employer's request. Dr. Chappell indicated that pelvic organ prolapse is multifactorial with a variety of risk factors, several of which applied to Employee. He opined that "from information I have reviewed and considered because of these various pre-existing risk factors, [Employee's] condition cannot be associated to one work incident on a particular day

2

with any precision, accuracy, or reliability." He further opined that "considering all causes and pre-existing factors, it is my opinion that even if a work incident was a potential contributing factor, work was no more than a possible minor contributing factor . . . that led to [Employee's] condition."

In light of the conflicting medical opinions, the parties took Dr. Tinker's deposition. Dr. Tinker acknowledged that he did not have Dr. Portera's records or an ultrasound report regarding Employee's history of uterine fibroids and bladder prolapse when he rendered his initial opinion. Dr. Tinker testified that pelvic organ prolapse is multifactorial and that

> [t]he extent to which one thing contributes more than something else is more of a legal question than a medical one, and so doctors don't spend their time trying to figure out what percentage of each one of those factors had impact. So it's a difficult question to answer for a doctor. . . . Based on the limited information that I had in having seen it after correction, my assessment was that, certainly, I thought work had an important role. Was that 35 percent, 49 percent, 52 percent, 57 percent? That's not a medical question and I don't know how to answer that.

> Dr. Tinker acknowledged that assigning a percentage of the responsibility for Employee's condition to her employment would be speculative and agreed that the employment might bear no responsibility for the injury.

*Beecher v. McKesson Corp.*, No. 2016-08-0279, 2016 TN Wrk. Comp. App. Bd. LEXIS 96, *2-5 (Tenn. Workers' Comp. App. Bd. Dec. 19, 2016) (footnotes omitted).

In affirming the trial court's decision not to award benefits, we observed that "the only medical opinions provided are equivocal at best. Dr. Tinker, an authorized physician, opined that he was unable to state that the employment contributed more than fifty percent to the injury as required by Tennessee Code Annotated section 50-6-102(14) (2015). Dr. Chappell, the physician who performed a records review at Employer's request, opined that Employee's condition was not causally related to the employment." *Id.* at *5. Thereafter, Employer filed a motion for summary judgment, asserting Employee was unable to establish the elements of her claim and that it was entitled to judgment as a matter of law. The trial court granted the motion and dismissed the case.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A trial court's ruling on a motion for summary judgment is reviewed de novo with no presumption of correctness. *See Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 895 (Tenn. 2016).

When a party who does not bear the burden of proof at trial files a motion for summary judgment, it must do one of two things to prevail on its motion: (1) submit affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrate that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. Tenn. Code Ann. § 20-16-101 (2016); *see also Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). If the moving party is successful in meeting this burden, the nonmoving party must then establish that the record contains specific facts upon which a trier of fact could base a decision in that party's favor. *Rye*, 477 S.W.3d at 265.

In addition to these requirements, Rule 56.03 provides specific filing requirements for both the moving party and the nonmoving party. The moving party must file a statement of undisputed material facts with its motion for summary judgment, ensuring that each fact is accompanied by a citation to the record. Tenn. R. Civ. P. 56.03. Likewise, the nonmoving party is instructed to respond to this statement of undisputed facts, indicating it agrees the fact is undisputed or demonstrating that the fact is disputed by providing a citation to the record. *Id.*

Here, Employee filed no response to Employer's properly supported motion for summary judgment as Rule 56 requires. "The requirements of Rule 56 are not mere suggestions. The use of the words 'must' and 'shall' in Rule 56.03 to describe the necessary elements of a motion for summary judgment and any response thereto are plain and unambiguous." *Thomas v. Zipp Express*, No. 2015-06-0546, 2017 TN Wrk. Comp. App. Bd. LEXIS 22, at *11 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 15, 2017). In a letter Employee filed on June 9, 2017, which we treat as her appellate brief, she presents arguments addressing why she failed to respond to the motion for summary judgment. However, it does not appear that she presented those arguments to the trial court, and we will not consider them for the first time on appeal. *Norton v. McCaskill*, 12 S.W.3d 789, 795 (Tenn. 2000) (Issues raised for the first time on appeal will usually be deemed waived.); s*ee also* Appeals Board Prac. & Proc. § 5.5 ("Issues or arguments not raised in the Court of Workers' Compensation Claims will be deemed waived on appeal.").

In addition, Employee does not contend that the trial court applied incorrect legal principles in analyzing Employer's motion for summary judgment or otherwise explain how the trial court erred in ruling on the motion, and we cannot make any such arguments for her. As stated by the Tennessee Supreme Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or

her." *Sneed v. Bd. of Prof'l Responsibility of the Sup. Court of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010).

Regardless, Employee has presented no evidence, either at the expedited hearing or at the hearing on the motion for summary judgment, demonstrating that any material fact regarding causation is disputed.[2] As stated by the trial judge, "Dr. Tinker, the panel selected physician, and Dr. Chappell, the employer's independent medical evaluator, provided the only expert opinions addressing medical causation, and neither physician concluded [Employee's] work activities were the primary cause of her condition." Dr. Tinker did, initially, indicate in his narrative report that Employee's pelvic organ prolapse arose primarily out of her employment. However, there is no indication that he rendered that opinion after considering all causes as required by Tennessee Code Annotated section 50-6-102(14)(D). In fact, when questioned in his deposition about the factors that can lead to pelvic organ prolapse and whether those additional factors played a role in Employee's injury, Dr. Tinker acknowledged that they may have. He observed that the cause of pelvic organ prolapse is multifactorial and that Employee had multiple risk factors that could have contributed to her condition. When questioned specifically about the role Employee's work played in causing her condition, Dr. Tinker acknowledged that the employment was one of several factors and that attempting to assign a particular percentage of the responsibility to her work duties would be nothing more than speculation. At the summary judgment stage, Employee offered no other evidence for the trial court's consideration.

Accordingly, like the trial court, we believe Employer has demonstrated that Employee's evidence is insufficient to establish an essential element of her claim as contemplated by Tennessee Code Annotated section 20-16-101, and that Employee has failed to set forth specific facts at the summary judgment stage showing there is a genuine issue for trial. Thus, Employer is entitled to summary judgment. The trial court's decision is affirmed, and the court's order dismissing the case is certified as final.

---

[2] An employee bears "the burden of proving each and every element of the claim by a preponderance of the evidence." *See* Tenn. Code Ann. § 50-6-239(c)(6) (2016). In order to establish that an injury arises out of the employment, the employee must show "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D).